CARRIVEAU, Appellant, vs. VATAPEK and another, imp., Respondents.

*February 11—March 10, 1931.*

For the appellant there was a brief by *Sheridan, Evrard*

*& Evrard* of Green Bay, attorneys, and *John L. Schlatterer* of Oshkosh of counsel, and oral argument by *Mr. Philip Sheridan* and *Mr. Schlatterer.*

For the respondent Vatapek there was a brief by *North, Parker, Bie, Duquaine, Welsh & Trowbridge,* attorneys, and *Samuel D. Hastings* of counsel, all of Green Bay, and oral argument by *Walter T. Bie.*

For the respondent Shulka there was a brief by *Rouiller & Dougherty,* attorneys, and *Alfred R. Gandrey* of counsel, all of Milwaukee, and oral argument by *Mr. Gandrey.*

ROSENBERRY, C. J. The jury found that the defendant Vatapek did not stop nor park his truck; he must therefore, as he claimed, have continued to travel southerly and was so traveling at the time his truck was struck from the rear by the Carriveau car. The defendant Vatapek did not carry the clearance lights required by the statute. It is undisputed, however, as the jury found, that there was a tail light visible for 500 feet to the rear and in addition to that there was a large reflector on the rear of the truck. Carriveau testified that the instant he saw these lights he turned to the left as quickly and as far as it was possible for him to do. Manifestly, he could not have seen the clearance lights more readily than the tail light and the reflector, and when he did see these lights he turned as quickly and as far as possible. Consequently the failure of Vatapek to carry clearance lights had no causal relation to the damage sustained by the plaintiff.

The court filed an exhaustive opinion which has been of great aid to us in the consideration of this case. The contention of the Carriveaus upon the trial was that the truck was parked fifteen or sixteen feet back of the Nash sedan. The finding of the jury negatives this contention of the plaintiffs. There is testimony given by Mr. Pelegrin, opposite whose farm entrance the Nash car was parked, that

from his entrance to the place where the glass was found was eighty-four feet. There is some confusion and some conflict in the testimony as to the position of the cars. The trial court was of the view that the evidence established the position of the truck to be at least eighty-four feet south and to the rear of the Shulka car; that as a matter of law, therefore, the blinding effect of the Shulka lights must have ceased and that the collision with the Vatapek truck was due to the failure of Carriveau to drive at a reasonable rate of speed and to maintain a proper lookout.

The statute, upon the violation of which the liability of the defendant Shulka is predicated, is as follows:

Sec. 85.13 (1927 Stats.). "(2) The minimum requirements for head lamps on any automobile or other similar motor vehicle, except motorcycles, while being driven upon the highway, shall be such as to enable the driver to clearly distinguish a person, vehicle or other substantial object two hundred feet ahead, and the design, adjustment and operation of such head lamps shall be such as to avoid dangerous glare or dazzle."

It is manifest that any head light which projects a beam of light of such intensity as to enable the driver clearly to distinguish a person, vehicle, or other substantial object 200 feet ahead, has some glare or dazzle. Before the guilt of a person charged with a violation of this requirement can be established, it must appear that the glare or dazzle is something more than that of a head light properly equipped and adjusted. The only witnesses who testified with respect to any violation of the statute by reason of the lights Shulka maintained on his car were Mr. and Mrs. Carriveau. They both testified that the lights did not affect them until they were within about forty feet of the Shulka car, and that they saw the car standing on the cement with all four wheels. Carriveau testified:

"They did not blind me altogether. I could see I was on the concrete and I could see to drive all right. Q. And

for what distance before the collision did they affect you? *A.* About forty or fifty feet away."

Carriveau also testified that as he went by the Shulka car he saw two persons standing behind the Shulka sedan. The lights on the Shulka car were those furnished with a Nash car—1926 model, known as a Special Six. It had run about 7,000 miles and had the ordinary ribbed lenses.

The evidence is totally insufficient to sustain the finding of the jury that the lights in question had a dangerous glare or dazzle. It is not necessary for us in this case to define these terms or to discuss at length the meaning and application of them. There is nothing here upon which even a conjecture can be based that the lights did not comply with the statute. The testimony of the witnesses rather tends to confirm the opposite view. If the lights on the Shulka car were improperly adjusted, the Carriveaus, who were traveling from the north to the south, would have felt the blinding effect of the lights long before they reached a point forty or fifty feet distant from the Shulka car. It certainly cannot be the law that an automobile driver who complies with the statute can be held liable on the ground that the lights which he is required to carry have a dangerous glare or dazzle. There is no evidence in this case from which it can be found that the head lights of the Shulka car emitted a glare and dazzle which would not have been emitted by a head light complying fully with the statute.

The trial court therefore correctly dismissed the plaintiff's complaint as to both defendants. It is apparent from the verdict of the jury that the proximate cause of the plaintiff's injury was the excessive rate of speed at which the Carriveau car was driven at and immediately preceding the accident and the failure of the driver to maintain a proper lookout.

*By the Court.*—Judgment affirmed.