O'CONNOR, Respondent, v. BRAHMSTEAD and another, Appellants.

*April 3—May 2, 1961.*

For the appellants there was a brief by *Hart, Kraege, Jackman & Wightman* of Madison, and oral argument by *W. L. Jackman.*

For the respondent there was a brief by *Curran & Curran* of Mauston, and *Seering & Newcomb* of Reedsburg, and oral argument by *Charles P. Curran* and *James R. Seering.*

BROADFOOT, J. The portion of the order granting a new trial in the interest of justice was based upon affidavits filed in connection with motions after verdict as well as upon observations by the trial court. The trial was commenced on July 11, 1960, and continued on July 12th and 13th. The issues were submitted to the jury about noon on the latter date.

From the affidavits it appears that a thirteen-year-old girl was in the courtroom throughout the trial. During

the course thereof, and particularly during the last two days, she sat with the defendant Brahmstead and· her father and was observed conversing with them during intermissions. She also conferred with Mrs. Brahmstead's counsel and at one time was invited by him to sit in front of the rail in the area reserved for the attorneys and parties. The association was open and apparent to the court and to the members of the jury. The trial court, because of the association, was under the impression that the girl was the daughter of the defendant Brahmstead. At about 4 o'clock in the afternoon on July 13th, the plaintiff and his wife talked with the girl and learned that she was the daughter of one of the jurors. They reported this conversation to one of the attorneys for the plaintiff, who reported the same to the judge in chambers and inquired as to whether or not a record should be made and as to whether a motion for a mistrial should be made. In his memorandum decision the trial judge stated it was his recollection that he advised plaintiff's attorney that a record need not be made at that time but could be at a later stage in the proceeding. There is no claim that the attorney for Mrs. Brahmstead knew the child was the daughter of one of the jurors until after the verdict had been returned.

The defendants now contend that the failure of the plaintiff to move for a mistrial before the verdict was returned waived the right to a new trial for alleged misconduct, and further that the alleged misconduct was not ground for a new trial as there was no communication between any juror and any party, and that communication or association between a party and a member of the family of a juror is not misconduct. Cases are cited and the matter is argued as though the court had granted the new trial because of prejudicial misconduct. The plaintiff also cites cases where new trials have been granted because of communications

with jurors after the commencement of a trial that were held to be prejudicial.

The trial court reviewed the cases and quoted from some of them, particularly from *Rasmussen v. Miller,* 268 Wis. 436, 68 N. W. (2d) 16, wherein we stated that, even though no prejudice was shown, confidence in our judicial system is imperiled if communication with jurors is countenanced and that public confidence in the jury system can only be preserved by the granting of new trials where there is an appearance of improper conduct. However, the trial court did not grant the new trial on the basis of any of our decided cases but, because the association of the defendant with the girl was so open and obvious to the jury and because the girl's father was selected as foreman of the jury and because the court felt that it was perhaps in error in failing to proceed promptly when the matter was reported to it, it granted the new trial in the interest of justice. We agree that the reasons given by the court were sufficient and the order was well within its discretion.

The defendants finally contend that Mrs. Brahmstead was not negligent as a matter of law and they were entitled to a directed verdict. At the conclusion of the testimony, the trial court felt that the record presented two fact questions with reference to the negligence of Mrs. Brahmstead which required determination by the jury. They were with respect to lookout and speed. In a written opinion filed after the conclusion of the trial, the court was still of the opinion that from the evidence presented before the jury it could have found Mrs. Brahmstead negligent as to both lookout and speed. On the other hand, except for the situation previously discussed, the trial court indicated that it would have sustained the negative findings of the jury as to her negligence in both respects.

Mrs. Brahmstead did not see the deer before her car struck it. On the other hand, both Adams and Langholff

testified that they did see the deer. However, the appellants presented evidence to show that on the east side of the highway there was a heavy stand of timber that came to within approximately 100 feet of the highway. Between the timber and the highway was what is described as a "fringe area" consisting of smaller pine trees with some open area. These pines at points were 60 feet away from the highway and at other points came within 20 feet of the highway. It is contended that a condition of camouflage existed; that it is difficult at best to see a deer within a wooded space, particularly if it is standing still. Mrs. Brahmstead testified that she was familiar with the highway and traveled over it once or twice a month. She testified that she had never seen a deer on that highway during daylight hours but had seen some in the evening, particularly in the fall of the year. There was a "Deer Crossing" sign about two miles south of the point of the accident and another one about one mile north thereof. She was familiar with both signs.

It is argued that Mrs. Brahmstead had no reason to anticipate that a deer would cross the road at the time of day and the time of the year when this accident occurred; that because of the camouflage situation she could not have seen it had she been looking in that direction until it was so close to her that she would have been confronted with an emergency and would not have had time to do anything to avoid the accident. It is argued further that her only duty was to look for vehicles or other objects within the highway and that in particular she had to pay attention to the oncoming Langholff car.

In order to comply with requirements of ordinary care as to lookout, Mrs. Brahmstead was required to keep a careful lookout ahead and about her, the extent of which was dependent upon the conditions and circumstances then present. Prudent lookout may require an observation beyond

the confines of the road. Mrs. Brahmstead knew that she was in an area inhabited by deer, not only because of her familiarity with the area but because of the presence of the deer-crossing signs. We agree with the trial court that the jury could have inferred from all of the conditions and circumstances present that she did not maintain a sufficient lookout. We further agree with the trial court that had not the events occurred that caused it to order a new trial in the interest of justice, the negative finding of the jury as to lookout could well stand.

It is next contended that where a driver does not see an object with which a collision occurs, the sole issue is lookout and that speed is only causal when it prevents or retards the driver after seeing the danger from slowing or stopping in time to avoid a collision. However, the trial court felt, and we agree, that there was an issue as to speed under the circumstances revealed by the record. There is no evidence that Mrs. Brahmstead was traveling at a rate of speed prohibited by law. It is argued that the deer-crossing signs contained no speed regulations nor was there any sign indicating when a point had been reached when deer might no longer present a hazard. Most warning signs upon the highway do not include restricted-speed warnings. It is true that some curve signs now contain a recommended safe driving speed, but many do not. Signs bearing a warning of a crossroad, railroad crossing, men at work, road under construction, etc., seldom have any recommendation as to safe driving speed. They are warning signs. Drivers are alerted to the fact that they are approaching a situation that requires careful operation of a motor vehicle. In passing upon the question of speed the jury would not be asked to determine whether Mrs. Brahmstead was driving faster than 65 miles an hour, but rather whether she was driving too fast for the conditions then existing.

We agree with the trial court that the questions relative to speed were properly submitted to the jury.

*By the Court.*—Order affirmed.