VANDERKARR and another, Respondents, v. BERGSMA and another, Appellants.

*No. 152. Argued June 2, 1969.—Decided July 3, 1969.*
(Also reported in 168 N. W. 2d 880.)

558

For the appellants there was a brief by *Ray T. Mc-Cann*, attorney, and *Richard A. McDermott* of counsel, both of Milwaukee, and oral argument by *Mr. McDermott*.

For the respondents there was a brief by *Godfrey, Godfrey & Neshek* of Elkhorn, and oral argument by *Thomas G. Godfrey*.

HANLEY, J. Four issues are raised on this appeal:

(1) Did the trial court commit prejudicial error in failing to instruct the jury regarding speed;

(2) Did the trial court err in giving the emergency instruction;

(3) Was the failure to equip the trailer with clearance lamps and reflectors causal; and

(4) Should this court exercise its discretionary power to order a new trial in the interest of justice?

### 1. Instruction of the Jury as to Speed.

The defendant candidly admits on this appeal that his negligence in stopping the truck on the highway and in failing to set out warning devices was a cause of this accident. He contends, however, that it is a gross miscarriage of justice to find that the plaintiff was free from negligence. The defendant's burden on appeal is difficult when he seeks to upset the jury's apportionment of negligence.

"In *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 773, 151 N. W. 2d 706, we stated that this court would set aside a jury's finding apportioning negligence only if at least one of three factors were present: (1) If, as a matter of law, the plaintiff's negligence equaled or exceeded that of the defendant; (2) if the percentages attributed to the parties (in light of the facts) are grossly disproportionate; and (3) if there was such a complete failure of proof that the verdict could only be based upon speculation." *Lautenschlager v. Hamburg* (1969), 41 Wis. 2d 623, 627, 628, 165 N. W. 2d 129.

It would certainly be improper in this case to hold that the plaintiff's negligence equaled, or even approached, the total negligence of the defendant. However, it will be necessary to consider whether or not the allocation of all of the negligence to the defendant was grossly disproportionate under the facts of this case.

The trial court did not err in failing to instruct the jury regarding the plaintiff's speed. Admittedly, it is a long-standing rule in Wisconsin that

". . . there is negligence on the part of the driver of an automobile when he proceeds at a speed at which he

cannot stop his vehicle within the distance he can see ahead . . . ." *Barker Barrel Co. v. Fisher* (1960), 10 Wis. 2d 197, 200, 102 N. W. 2d 107. *See also Bailey v. Hagen* (1964), 25 Wis. 2d 386, 130 N. W. 2d 773.

However, this "assured clear-distance" rule was not properly applicable to this case. The plaintiff testified that he first spotted the obstruction in his lane when he was between 200 and 400 feet away. Instead of quickly slowing down, plaintiff coasted closer to the obstruction before he could clearly identify that the obstruction was blocking his entire lane. At no time did the plaintiff ever put on his high beams which, by statute,[2] were required to have an intensity sufficient to disclose persons and vehicles at a distance of 350 feet. It is quite obvious that if the plaintiff had quickly applied his brakes after his initial observation, he would have been able to avoid the collision.[3] The failure to do so presents a question as to management and control and not a question as to speed.

"The opinion in the case at bar also adheres to the principle so well established in the prior decisions of this court, that failure of the operator to reduce his speed to the extent necessary to enable him to stop within the distance he can see ahead because of obstruction of vision due to blinding lights of an approaching car, smoke, fog, etc., before any vehicle or obstruction is sighted by him in his lane of travel, presents an issue of negligence as to speed and not as to management and control. On the other hand, once the operator sights a stopped or slowly moving vehicle obstructing his lane of travel ahead, failure to timely and adequately apply his brakes, or to turn

---

[2] *See* sec. 347.10 (2) (a), Stats.

[3] The overall stopping distance at the various speeds involved in this case (assuming a dry, level, hard-surfaced highway which we have here) are:

| | Reaction Time | Emergency Braking Distance | Total |
|---|---|---|---|
| 40 miles per hour | 44 feet | 80 feet | 124 feet |
| 45 " " " | 50 " | 101 " | 151 " |
| 50 " " " | 55 " | 125 " | 180 " |

sharply to the right or left, so as to avoid a collision, presents an issue of management and control." *Schroeder v. Kuntz* (1953), 263 Wis. 590, 595, 58 N. W. 2d 445 (concurring opinion of Mr. Justice CURRIE).

". . . Plaintiffs disclose the real relation of speed to the case by contending that while there was no negligent speed up to the time Culver saw the Kjer car, there was a failure on the part of Culver to reduce his speed, and that therefore the speed of the car at the time of collision was excessive. This is just another way of saying that Culver's default was his failure properly to control his car. If upon seeing the Kjer car he should have reduced his speed in order to bring his car under better control, that goes to the way in which he managed his car. . . Culver saw the Kjer car in time to cut his speed and bring his car under control. Whether he did so, and otherwise handled his car so as to discharge his duty to his guests, presents a question of management and control. . . ." *Culver v. Webb* (1944), 244 Wis. 478, 485, 12 N. W. 2d 731.

It is quite obvious that the trial court did not err in refusing to instruct the jury on the issue of speed. The real issue presented by the facts was whether the conduct of the plaintiff, after he saw the obstruction, amounted to negligence. This exact issue was submitted to the jury. The failure to instruct the jury on the issue of speed was not error.

### 2. Emergency Instruction.

The jury specifically found that the plaintiff managed and controlled his automobile in a nonnegligent manner. The ordinary rule is that if there is any credible evidence to support a factual finding of the jury, the finding will be affirmed. *Yelk v. Seefeldt* (1967), 35 Wis. 2d 271, 151 N. W. 2d 4; *Chille v. Howell* (1967), 34 Wis. 2d 491, 149 N. W. 2d 600.

Had the plaintiff had time to make a rational decision in this case, there can be little doubt that his manage-

ment and control would have been negligent. A person is not under an obligation to avoid all accidents, but he is under an obligation to use reasonable means to avoid an accident when danger appears.

". . . the duty of a driver is not to have his car under such control as to enable him to avoid accident, but it is his duty to use ordinary care to that end. . . ." *Simon v. Van de Hey* (1955), 269 Wis. 50, 55, 68 N. W. 2d 529.

We think that a reasonable person who saw something in his lane about 200 or 400 feet ahead of him would slow down and approach cautiously, or, at least, flick on his bright lights to see what was ahead.

The circumstances of this case, however, justified the giving of the emergency instruction. Assuming that the plaintiff was proceeding at 45 miles per hour, he was traveling at 66 feet per second. If he saw the obstruction when he was 200–400 feet away, he had somewhere between three and six seconds before an impact. This court has often held that in similar situations where a driver has less than four seconds to act, an emergency is created as a matter of law. *Riehl v. De Quaine* (1964), 24 Wis. 2d 23, 127 N. W. 2d 788 (two seconds); *Schumacher v. Klabunde* (1963), 19 Wis. 2d 83, 119 N. W. 2d 457 (three seconds); *Papacosta v. Papacosta* (1957), 2 Wis. 2d 175, 85 N. W. 2d 790 (four seconds). In *Wanserski v. State Farm Mut. Automobile Ins. Co.* (1964), 23 Wis. 2d 368, 127 N. W. 2d 264, the court held that a five-second interval did not necessarily create an emergency as a matter of law, but that it did create at least a jury question on the issue.

"The application of the emergency rule rests upon the psychological fact that the time which elapses between the creation of the danger and the impact is too short under the particular circumstances to allow an intelligent or deliberate choice of action in response to the realization of danger. . . . This time interval may in some cases be so short that no choice of alternative action can

be made. The reaction is practically instinctive or intuitive and as a matter of law there can therefore be no negligence. . . ." *Cook v. Thomas* (1964), 25 Wis. 2d 467, 471, 131 N. W. 2d 299.

This case does not present facts which disclose that there was no emergency as a matter of law. It was for the jury to determine, first, whether the plaintiff was free from negligence leading up to the creation of the emergency, and second, whether the time element was short enough to give the plaintiff the benefit of the rule. While we cannot agree with the jury's verdict, upon the evidence it is impossible to say that an emergency did not exist as a matter of law.

We point out that the jury specifically found that the plaintiff was not negligent as to lookout. The only evidence which would indicate that the plaintiff contributed to the creation of the emergency was that he did not quickly slow down as soon as he saw the obstruction in his lane. While it appears that he should have, the jury could excuse that conduct under the emergency rule.

A jury question was created under the facts of this case and it was not error to submit the emergency rule.

*Clearance Lamps and Reflectors.*

The defendant contends that the court erred in submitting the absence of clearance lights as an element of negligence. The defendant contends that it was uncontradicted in the evidence that the trailer was equipped with one working taillight and that the absence of any clearance lights or reflectors could not have been a cause of the accident.

The court has been presented before with the question whether a failure to equip a vehicle with required clearance lamps and reflectors is causal when a rear-end accident occurs. The problem which is presented is that all vehicles are required to have tail lamps (sec. 347.13,

Stats.) and stop lamps (sec. 347.14). Obviously, the purpose of tail lamps is to inform a following driver of the presence of the vehicle in front. On the other hand, the purpose of clearance lamps and reflectors (*see* secs. 347.16, 347.17, 347.18, and 347.19) is to mark the extreme width of the vehicle. The defendant contends that the failure to equip a vehicle with clearance lamps and reflectors cannot be causal unless the width of the vehicle is involved. The court declined to decide this question in *Kiggins v. Mackyol* (1968), 40 Wis. 2d 128, 161 N. W. 2d 261. The court also avoided this exact issue in *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N. W. 721; and *Carriveau v. Vatapek* (1931), 204 Wis. 139, 235 N. W. 445.

It seems quite clear that the failure to equip a vehicle with clearance lamps and reflectors cannot be causal unless the width of the vehicle is in issue. If a proper tail lamp is on the vehicle and working, the vehicle will be visible from the rear. If the proper tail lamp is not on the vehicle or not working, the negligence involved concerns the tail lamp and not the clearance lamps.

Although the court erred in submitting a question on this aspect of negligence, the error was not prejudicial. Since the plaintiff was absolved of any negligence by the jury, and since the defendant was admittedly causally negligent in stopping on the highway and in failing to place warning devices around the stopped vehicle, all of the negligence would have been attributable to the defendant whether or not the issue of clearance lights was submitted to the jury.

### New Trial in the Interest of Justice.

The defendant argues that even if the court does not find error in the issues presented for review, it should be obvious from an overall view of the case that justice has miscarried. We must give serious consideration to this contention.

Sec. 251.09, Stats., provides that:

". . . if . . . it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from . . ."

The evidence clearly establishes that the tail lamp of the trailer was on and probably the turn signal. The plaintiff never denied that these lamps were on,—he only maintained that he never saw them until after the accident.

The trial court instructed the jury on lookout (Wis J I—Civil, Part I, 1055), camouflage (Wis J I—Civil, Part I, 1056), and failure to see what is in plain sight (Wis J I—Civil, Part I, 1070). While the truck may have blended with the road and trestle, obviously the tail lamp did not. There was, however, a statement that the tail lamp could have been dirty.

The plaintiff's testimony conveniently had him seeing the object in the road in time to stop, thus avoiding any question as to speed. However, the failure to stop, although it is conceivably excusable under the emergency doctrine, is equally indicative that the plaintiff did not see the obstruction as early as he claims. Although the jury apparently found the plaintiff's management and control excusable under the emergency doctrine, our feeling is that if a person continues at 45 miles per hour to within 100 feet of a known obstruction, he is not exercising ordinary care even though he was in an emergency situation.

While there is some credible evidence that the plaintiff was not negligent as to lookout or as to management and control, the great weight of the evidence indicates that he was negligent to some degree in one or both of those areas.

"But, the rule is just as well settled that a new trial may be granted in the interest of justice because the verdict is against the great weight of the evidence even though there is sufficient credible evidence to support the jury's finding. . . ." *Pruss v. Strube* (1968), 37

Wis. 2d 539, 544, 545, 155 N. W. 2d 650, and cases cited therein.

We think it is highly probable that justice has miscarried in this case. In the exercise of our discretionary power, pursuant to sec. 251.09, Stats., the case is remitted to the trial court for a new trial solely on the issue of liability.

*By the Court.*—Judgment reversed, and cause remanded for a new trial on the issue of liability.