RESHAN and another [Case No. 196],

SCHAFER, by Guardian *ad litem,* and another [Case No. 197],

SMITH and another [Case No. 198], Plaintiffs and Respondents, v. HARVEY and another, Defendants and Appellants: MARESH and another, Defendants and Respondents.*

*Nos. 196–198. Submitted April 2, 1974.—Decided May 8, 1974.*
(Also reported in 217 N. W. 2d 302.)

* Motion for rehearing denied, with costs, on June 28, 1974.

For the appellants the cause was submitted on the brief of *Foley & Capwell, S. C.*, of Racine.

For the plaintiffs-respondents the cause was submitted on the brief of *Kolbe, Sharp & Arena,* attorneys for Thomas W. Reshan and Nancy Reshan; *Whaley & Whaley,* attorneys for David A. Schafer and Gottlieb Schafer; and *La France, Thompson, Evans, Dye, Hostak & Clack,* attorneys for Cameron V. Smith and Candace Smith; all of Racine.

WILKIE, J.   The first basic issue raised on this appeal is whether there is credible evidence to support the jury verdict that there was causal negligence against the defendant, Frank Harvey.

Both drivers were found negligent by the jury in an ultimate fact verdict and it assessed the negligence 90 percent against the defendant-host and 10 percent against the defendant driver of the car approaching in a southerly direction on the other side of the interstate highway (the lanes being situated beyond the median).

The trial court gave instructions on speed and also on lookout. Our review here is limited to sustaining the jury's verdict if there is any credible evidence which, under any reasonable view, fairly admits of inferences to support the verdict. [1]

### Speed.

The court gave the usual instruction as to speed [2] that a person shall not drive at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing

[1] *Holzem v. Mueller* (1972), 54 Wis. 2d 388, 195 N. W. 2d 635; *Bergmann v. Insurance Company of North America* (1970), 49 Wis. 2d 85, 181 N. W. 2d 348; *Aetna Casualty & Surety Co. v. Osborne-McMillan Elevator Co.* (1967), 35 Wis. 2d 517, 151 N. W. 2d 113; *Cheetham v. Piggly Wiggly Madison Co.* (1964), 24 Wis. 2d 286, 128 N. W. 2d 400.

[2] Wis J I—Civil, Part I, 1285.

and that he shall so regulate his speed as may be necessary to avoid colliding with any object, person or vehicle or on entering the highway in compliance with legal requirements and using due care. The court further instructed that a driver should drive at an appropriately reduced speed when special hazards exist with regard to other traffic or by reason of weather or highway conditions. In its decision on motions after verdict the court considered "that the jury might well have concluded that each of these normally moderate speeds was excessive under the prevailing conditions." We think not. The speed of the Harvey vehicle was estimated at 40–45 miles per hour and the speed of the Maresh vehicle at 50 miles per hour or greater. The accident occurred shortly after noon; it was raining but all the witnesses agreed that visibility was good.

The appellants urge that the court must find that a speed of 40–50 miles per hour on a highway such as I–94 under the conditions prevailing at the time is not excessive as a matter of law. Although courts are reluctant to tamper with a jury verdict in this area, in the present case it cannot be ascertained from the verdict that the jury considered the speed of the Harvey vehicle to have been too fast for conditions then prevailing. Surely a driver on a divided highway is not bound to foresee that drivers on the opposite side of a median may lose control and invade the opposite lanes of traffic and thus is not bound to maintain such a rate of speed as necessary to avoid a collision should one do so. "Maintaining a given rate of speed on one's proper lane of travel on a highway is not negligent as excessive unless the circumstances render it reasonably likely to result in loss of control or it is voluntarily maintained when it is reasonably to be anticipated that the lane of travel may be invaded." [3] There was no issue in the case as to manage-

[3] *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 425, 295 N. W. 755.

ment and control by the driver of the Harvey vehicle. No instruction was given on this subject with respect to possible negligence of the appellant. Although the definition of excessive speed in the *DeKeyser Case* suggests that if the driver of the Harvey vehicle had seen the Maresh car enter the median strip he may have had the duty to reduce his speed because of a reasonable anticipation that his lane of travel might be invaded by such vehicle, the evidence is uncontroverted that the defendant Harvey did not see the Maresh car until it was in the southbound lanes shortly before the collision. Therefore, this is not a case of voluntarily maintaining a given speed in the face of a perceived hazard.

It has also been held by this court that it is negligent for the driver of an automobile to proceed at a speed at which he cannot stop his vehicle within the distance he can see ahead.[4] However, there is evidence in this case that if the Harvey vehicle had seen the Maresh car when it first entered the median strip it could have stopped at the speed it was traveling well before the impact. In the *Vanderkarr Case* this court held that where the operator of a motor vehicle sighted a stopped or slowly moving vehicle obstructing his lane ahead, the failure to apply the brakes or to turn so as to avoid a collision was an issue of management and control and not speed where it was physically possible to have stopped at the time the obstruction was first sighted.

The evidence here did not support an instruction as to speed with reference to the defendant Harvey. Any finding of causal negligence, however, is sufficient to support the verdict. Therefore, we must consider whether there is credible evidence to support a finding that the defendant Harvey was causally negligent as to lookout.

---

[4] *Vanderkarr v. Bergsma* (1969), 43 Wis. 2d 556, 168 N. W. 2d 880.

## *Lookout.*

It cannot be said that as a matter of law the duty of maintaining a careful lookout on an interstate highway does not include the duty to observe objects in the median, especially when one is traveling (as Harvey was here) in the lane closest to the median. That there is a duty of lookout beyond the confines of the roadway being traveled was recently emphasized in the case of *Smith v. St. Paul Fire & Marine Ins. Co.*[5] as follows:

"In analyzing plaintiff's argument we must start from the very well-established premise that it is the absolute duty of every operator of a motor vehicle to exercise ordinary care to keep a careful lookout ahead and *about* him to avoid an accident." (Emphasis supplied.)

There are other cases that are pertinent.[6]

In *Brown v. Travelers Indemnity Co.*[7] a driver was found negligent as to lookout when he struck a cow which his wife had observed at the side of the road. The driver did not see the animal until it was on the road and he struck it. The court said that Brown's failure to see the cow could not be excused on the ground that it was ten feet off the traveled portion of the highway facing south and not in motion because under the circumstances the animal was plainly visible to a passenger in the car. The court felt that if Brown had observed the presence of the cow as he should have done, he could have taken steps which would have probably avoided a collision.

---

[5] (1973), 56 Wis. 2d 752, 759, 203 N. W. 2d 34.

[6] *Brown v. Travelers Indemnity Co.* (1947), 251 Wis. 188, 28 N. W. 2d 306; *O'Connor v. Brahmstead* (1961), 13 Wis. 2d 432, 108 N. W. 2d 920; *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. 2d 499, 117 N. W. 2d 666; *Paulus v. Truskowski* (1956), 271 Wis. 565, 74 N. W. 2d 185.

[7] *Supra,* footnote 6.

In *O'Connor v. Brahmstead* [8] a driver was found causally negligent for striking a deer which resulted in injury to another vehicle on the road. The defendant in that case argued that her only duty was to look for vehicles or other objects within the highway and that in particular she had to pay attention to an oncoming car. This court stated that:

"In order to comply with requirements of ordinary care as to lookout, Mrs. Brahmstead was required to keep a careful lookout ahead and about her, the extent of which was dependent upon the conditions and circumstances then present. Prudent lookout *may* require an observation beyond the confines of the road." (Emphasis supplied.) [9]

In the *O'Connor Case* the defendant admitted being aware that the area along the road was inhabited by deer and being familiar with deer-crossing signs in the area.

And in *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* [10] a driver in a business district argued that he was not negligent as to lookout for not seeing a child dart out into the street. This court said:

". . . We cannot hold a driver in traffic in a business district fulfils his duty of lookout by only looking ahead. . . . How far under such circumstances the driver must keep a lookout to the side is a question of fact but is not applicable here. If Flury had kept a proper lookout he would have seen the child sooner than he did with only a slight deviation from looking straight ahead."

The case of *Paulus v. Truskowski* [11] also pertains to the scope of a driver's duty on a divided highway with respect to lookout with regard to the median and opposite lanes of traffic. As a matter of fact, *Paulus* is an auto-

---

[8] *Supra*, footnote 6.

[9] *Id.* at pages 437, 438.

[10] *Supra*, footnote 6, at page 505.

[11] *Supra*, footnote 6.

mobile accident lawsuit involving U. S. Highway 41 in
Racine county. The circumstances of that case are re-
markably similar to those here. One car had been pro-
ceeding north on U. S. Highway 41, which highway
consisted of two northbound lanes and two southbound
lanes, divided by a boulevard about 20 feet in width. The
other car involved in the accident was following a truck
in the southbound lane and about one quarter of a mile
from the accident scene it passed the truck and blew a
tire while traveling at 60 or 65 miles per hour. The car
first swerved to the right shoulder and then back east
across both southbound lanes, the boulevard and into the
northbound lanes. It hit a truck, spun around and
continued south and struck the defendant's car. The jury
found the defendant guilty as to lookout or control but
the trial court directed a verdict dismissing the com-
plaint.

This court on review of the case found that the testi-
mony most favorable to the plaintiff indicated that the
defendant did not see the car until it struck the un-
identified truck and was 150 to 200 feet ahead, whereas
a passenger in the defendant's car saw the lights of the
invading car 500 feet ahead and as it traveled about
70 feet on the boulevard. The plaintiff contended that
since it was possible for the defendant to have seen
the car driven by Wade sooner than he did he should be
held guilty of negligence as to lookout as a matter of law.
This court said:

"We have no difficulty in concluding that Truskowski
was not guilty of negligence with respect to lookout as
a matter of law. We are aware of no rule that requires
the driver of an automobile on a boulevard highway,
the lanes of which are separated by a centerpiece, to
keep a lookout to his left and across the centerpiece so
as to observe vehicles traveling in the opposite direction.
There was no obligation under the law on the part of
Truskowski to have observed the car driven by Wade

while it was traveling in the southbound lane of traffic." [12]

In *Paulus* the court was concerned only with the duty to observe the opposite lanes of traffic. Even the respondents agree here that there is no such duty. However, *Paulus* does not hold that there is no duty to observe the median. In fact, *Paulus* does not actually discuss the duty of peripheral vision of a driver on a divided highway, but the implication is that a finding of negligence might be made but could not be considered causal.

We, therefore, are convinced that there was evidence to support the jury determination that Harvey was negligent as to lookout.

The next question is, of course, whether that negligence was a substantial factor in causing the collision. [13] Harvey could have taken appropriate action to avoid a collision if he had seen the Maresh car in the median as soon as it was possible for him to do so. The evidence establishes that the Maresh car was in the median for a period of approximately six seconds and perhaps longer. There is testimony of the driver of the Maresh vehicle that he thought a car passed him on the right shortly before the collision. There is dispute in the briefs over whether the evidence can support a finding that the Maresh vehicle had come to rest in the southbound lanes when struck. The driver of the Maresh vehicle testified that he thought the car had stopped. Professor Archie H. Easton, called as an expert on accident reconstruction, testified that it was his opinion that the Maresh car entered the southbound lanes at a speed of approximately 34 miles per hour. Even assuming that the car was moving at that speed, the facts of this case do not compel a finding that the collision was unavoidable as a matter of

[12] *Id.* at page 569.

[13] *Hoeft v. Milwaukee & Suburban Transport Corp.* (1969), 42 Wis. 2d 699, 711, 168 N. W. 2d 134.

law, thus distinguishing the case from *Paulus*. The jury could have reasonably inferred here that had the Harvey vehicle slowed its speed, or perhaps changed lanes, it could have passed to either side of the Maresh vehicle and have avoided the accident which occurred.

*Negligence excused as a matter of public policy.*

Notwithstanding the negligent failure of Harvey to maintain a completely adequate lookout, we are satisfied that this is one of those unusual cases in which a judicial determination should be made in favor of holding the defendant Harvey free of any effect of his negligence.[14] This accident occurred on the interstate highway system. We are satisfied that a driver proceeding as Harvey was here, without any negligent speed, and where the accident occurred because the Maresh car, completely out of control and plunging across the median, hit the Harvey car as it was traveling south, is such an unusual occurrence that "public policy precludes the attachment of liability for his conduct." [15]

Several other issues are presented on this appeal. We do not reach these issues because of the disposition made of this matter.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

[14] *Schilling v. Stockel* (1965), 26 Wis. 2d 525, 533, 133 N. W. 2d 335.

[15] *Id.* at page 534.