484 P.2d 1056

**Fred N. STUMP, Appellant,**

v.

**Vincent L. FITZGERALD, Appellee.**

**No. I CA–CIV 1357.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 18, 1971.

Rehearing Denied June 15, 1971.

Maupin, Wilson & Maud, by Oliver H. Maud, Phoenix, for appellant.

Langerman, Begam & Lewis, by Jack Levine, Phoenix, for appellee.

STEVENS, Presiding Judge.

Vincent L. Fitzgerald, a single man, was the plaintiff in an action filed in the Superior Court seeking damages for the personal injuries which he sustained in a motor vehicle accident. The defendants were the appellant Fred N. Stump, a single man, and David P. Garcia. Mr. Oliver H. Maud represented Stump in the trial and represents him on the appeal. Mr. Arthur M. Johnson represented Garcia in the trial. A verdict was rendered in favor of Fitzgerald and against Stump. A judgment was entered thereon. A verdict was rendered in favor of Garcia in relation to the Fitzgerald claim against Garcia and no appeal has been taken from that verdict and the judgment entered pursuant thereto.

On appeal, Stump urges three questions for review, stating them as follows:

1. "Should the court have granted appellee's requested instruction No. 18 in the form presented on intervening cause?"

2. "Should the court have given appellee's request for an instruction on sudden peril, which instruction was merely read by the court from California Jury Instructions, No. 137?"

3. "Should the court have granted appellant Stump's motion for directed verdict at the close of the cases for plaintiff and this defendant?"

At the time of the oral argument before this Court, Stump expressly abandoned the first question.

This case is before us on a short record. The reporter's transcript is limited to the testimony of four witnesses, these being the investigating highway patrolman, Garcia, Fitzgerald, and the driver of the car in which Fitzgerald was a passenger, as well as the exceptions to certain of the instructions. This Court does not have a reporter's transcript of the instructions which were delivered by the trial court to the jury for its consideration in connection with this case.

As to the third question we must rely on the trial court's minutes. The minutes disclose that Stump made a motion for a directed verdict at the close of the plaintiff's case. The motion was denied. Immediately following the denial of the motion for directed verdict, we find the following recited in the trial court's minutes:

"The record may show that Mr. Johnson concedes Mr. Maud the right to proceed first. In view of the age of Defendant Stump, the following hearing is held to see if he is competent to testify in the case.

"Fred N. Stump is sworn, and the Court interrogates him, in the absence of a jury.

"Counsel stipulate that Defendant Stump, if he were to testify, has no recollection of the accident; and the Court finds that defendant Stump is not competent to testify."

Thereafter the court reconvened in the presence of the jury and the minutes recite:

"Mr. Maud, on behalf of Defendant Stump, informs the jury of the stipulation as to Mr. Stump's not recollecting the accident."

Thereafter in connection with the presentation of the case on behalf of Stump, portions of the Garcia deposition were read to the jury and certain exhibits were introduced into evidence.

After all of the evidence had been presented and after all the parties had rested, the record is silent as to the renewal of the Stump motion for a directed verdict. The motion for a directed verdict was thereby waived. Lillywhite v. Coleman, 46 Ariz. 523, 52 P.2d 1157 (1935).

After the judgments had been entered, Stump filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. A motion for judgment notwithstanding the verdict would not lie under these circumstances. Rule 50(b), Rules of Civil Procedure, 16 A.R.S. We hold that Stump may not raise question three on the appeal. This holding is not too vital for the reason that our review of the record convinces us as to the correctness of the ruling of the trial court.

We come then to the second question. We quote from a portion of the reporter's transcript which was furnished to us.

"THE COURT: Gentlemen, the Court then read, at the request of some of you gentlemen—

MR. LEVINE: The plaintiff.

THE COURT: The plaintiff, No. 137, from California Jury Instructions, One, at Page 330, which is the instruction on sudden peril.

MR. MAUD: Defendant Stump objects to the giving of the instruction on sudden peril, for the reason that there is

no evidence, whatsoever, that the only person to whom the Stump vehicle could conceivably have presented any peril in this case was the driver of the vehicle, the Fitzgerald—Heather Fereira, and that the evidence is very clear in that reasonable minds could not differ as to the conclusions to be drawn from the facts, but that there was no sudden peril facing the Heather Fereira vehicle.

MR. JOHNSON: The Court was eminently fair in giving that instruction.

MR. MAUD: I would likewise use that argument as to the defendant Garcia."

The Heather Fereira mentioned in the above quotation was the driver of the car which Fitzgerald owned and in which he was riding as a passenger. She will hereafter be referred to as the plaintiff's driver. The main thrust of the argument on appeal relates to the above objection. It was also urged on oral argument that the sudden peril instruction should be discarded in the same manner that our Supreme Court has discarded the unavoidable accident instruction. In relation to the unavoidable accident instruction one of the illustrative cases is the case of Trickel v. Rainbo Baking Company of Phoenix, 100 Ariz. 222, 412 P.2d 852 (1966). The sudden peril instruction has been approved in those circumstances wherein the giving of the instruction was appropriate. The following cases are illustrative: Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962); Dobbertin v. Johnson, 95 Ariz. 356, 390 P.2d 849 (1964); City of Tucson v. Wondergem, 105 Ariz. 429, 466 P.2d 383 (1970); Serrano v. Kenneth A. Ethridge Contracting Company, 2 Ariz.App. 473, 409 P.2d 757 (1966); Fulton v. Johannsen, 3 Ariz.App. 562, 416 P.2d 983 (1966); and Cano v. Neill, 12 Ariz.App. 562, 473 P.2d 487 (1970). The California Jury Instruction in question can be found quoted in full in Fulton, 3 Ariz.App. at 564, 416 P.2d at 985. We hold that the sudden peril or sudden emergency instruction is well recognized in our law and may be given in appropriate circumstances as a proper supplement to the standard instruction defining negligence. We now turn to the evidence to ascertain whether the above-quoted objections by Stump were well taken.

The accident in question occurred after dark on U.S. Highway 60. This highway connects Sun City and Phoenix and the general direction thereof is northwest-southeast. The accident occurred near the Peoria underpass. We will refer to the Sun City side and to the Phoenix side of the underpass. In the area of the underpass the highway is a four-lane thoroughfare with two lanes allocated for each direction of traffic. As one approaches the underpass from Sun City the highway curves to the left and as one emerges from the Phoenix side of the underpass it curves to the right. The difference in elevation between the highway at ground level and the highway as it passes through the underpass was not established. The degree of the curve was not established. The photographs which were introduced in evidence indicate to this Court that these curves can be characterized as "marked curves" to differentiate them from "slight curves." The speed limit was 45 miles per hour. The evidence indicates that neither of the defendants was driving in excess of the posted speed limit. The grade of the highway as it emerged on the Phoenix side of the underpass was estimated to be 6 degrees.

As before stated, Fitzgerald was a passenger in an automobile owned by him and driven by the person we have described as the plaintiff's driver. On the afternoon of the day in question Fitzgerald and his driver had visited Sun City; they had eaten their dinner and they were en route to Phoenix in the outside lane, that is, the right-hand lane used by the slower moving traffic.

As the plaintiff's driver approached the underpass from the Sun City side she observed headlights facing in her direction, they being on the Phoenix side of the underpass. She was not certain as to the

location of the car bearing the headlights or as to whether the car was moving or stationary. The vehicle which she observed was the Stump vehicle. She gradually reduced her speed by easing the pressure on the gas pedal and after she emerged on the Phoenix side of the underpass she realized that the Stump vehicle was in the plaintiff's right-hand lane facing in the direction of Sun City. It was located near the crest of the grade. The driver testified that there was a "curb" to her right. The traffic in both directions was described as "heavy" and as "very heavy." She was not able to turn into the left-hand lane for Phoenix bound traffic due to the fact that faster traffic was passing her in that lane. She then proceeded to stop the car with a continuous application of the brakes without skidding her tires. By the time that she realized her situation she determined that she had no alternative other than to stop. She described the stopping movement as follows:

"I would say it was rather a rapid stop at that time."

The plaintiff's driver brought her car to rest without contact with the Stump vehicle, in fact there was no contact with the Stump vehicle at any time in relation to this case. The record is silent as to the circumstances under which the Stump vehicle came to rest in its position on the highway and is silent as to the period of time it was so located.

The defendant Garcia, a California resident, was driving from California to Williams Field east of Phoenix. This was the first occasion that he had had to drive over the highway. He was driving under the speed limit in the right-hand lane for slower traffic. He had no awareness of the Fitzgerald vehicle before the latter entered the curve leading to the underpass. He became aware of the Fitzgerald vehicle as he was about to emerge from the underpass. He became aware that he was gaining on the Fitzgerald vehicle. He then saw the brake lights go on on the Fitzgerald vehicle. Garcia could not turn into the left lane due to the faster traffic therein. He applied his brakes, leaving approximately 38 feet of skid marks and struck the rear of the Fitzgerald vehicle which was then approximately 425 feet from the underpass. It is uncertain as to whether the Fitzgerald vehicle was moved by the impact. The Fitzgerald vehicle was an estimated 38 feet from the Stump vehicle at the time of the investigation by the highway patrolman.

An examination of the written requested instructions which appear in the file and of the trial judge's notations thereon leads this Court to believe that the issue as to whether the plaintiff's driver was the agent of Fitzgerald was submitted to the jury and on that basis the question as to whether the negligence, if any, of the plaintiff's driver was imputed to Fitzgerald thus making available the defense of contributory negligence.

It is in this setting that the sudden emergency instruction was requested by the plaintiff.

■ Stump urges that the sudden emergency instruction could not apply to Fitzgerald for the reason that the plaintiff's driver was faced with an absence of alternatives and came to rest without contact with the Stump vehicle. The appellant urges that the instruction was worded broadly and that the jury could have applied the instruction to Garcia. We agree with the latter contention and we hold that it was appropriate to apply the instruction to Garcia.

The plaintiff's driver testified that she did not know whether the Fitzgerald car was equipped with flasher warning lights. If it was so equipped they were not used. The evidence did not establish whether the car was so equipped. The plaintiff's driver estimated that she was in a stationary position for 5 to 6 seconds before the impact from the rear by the Garcia vehicle. Fitzgerald estimated the lapse of time to be shorter.

■ We hold that in the absence of evidence explaining the presence and position

of the Stump vehicle, the presence thereof under these circumstances was a continuing act of negligence. We need not decide whether the sudden peril instruction was proper as to the plaintiff and his driver. At most under the circumstances it would be harmless error. Certainly Garcia was faced with a sudden peril on an unfamiliar highway traveling in the slower lane of traffic with his ability to analyze the road conditions reduced by darkness and by the peculiar structure of the highway. In our reading of the Garcia testimony we were impressed, as the jury must have been impressed, with his complete honesty. The plaintiff's driver was also a good witness.

We believe we should explain that Judge Ronan presided at the trial. After the trial was completed and before the post-judgment motions had been decided Judge Ronan died unexpectedly. Judge Riddel succeeded him and ruled on the post-judgment motions after which this appeal was perfected.

On the record which has been submitted to us we find no error.

The judgment is affirmed.

CASE and DONOFRIO, JJ., concur.