[Civil No. 3944. Filed May 2, 1938.]

[78 Pac. (2d) 997.]

WESTERN TRUCK LINES, LTD., a Corporation, and BILL MOREY, Also Sometimes Known as and Called D. A. MOREY, Appellants, v. VIVIAN BERRY, as Administratrix of the Estate of W. S. BERRY, Deceased, Appellee.

Mr. Henderson Stockton, Mr. Emmett R. Feighner and Mr. Eli Gorodezky, for Appellants.

Mr. Albert W. Gurtler and Messrs. Laney & Laney, for Appellee.

ROSS, J.—W. S. Berry was killed in a collision between his automobile and a truck of the Western Truck Lines driven by Bill Morey, and this action was brought by Vivian Berry as his personal representative to recover damages to his estate on account, of such death. The Western Truck Lines and Morey were made defendants. From a judgment and an order overruling a motion for new trial, defendants have appealed.

As is usual in such cases, there is a sharp conflict as to how the accident occurred and whose was the fault. We state the controlling facts before taking up the assignments of error.

The Gilbert highway runs east and west and the Mesa-Chandler highway runs north and south and intersect about 3 miles north of Chandler. The latter is a through highway and approaches to it are posted with "Stop" signs. The fatal accident occurred at the above intersection February 6, 1937, at about 7:30 P. M. The deceased was driving with his wife and their two small children in a Whippet automobile, traveling easterly on the Gilbert highway. The truck was traveling southerly along the Mesa-Chandler highway. As the Whippet was proceeding across the intersection, intending to make a left-hand turn onto the Mesa-Chandler highway, or after such turn was

completed plaintiff insists, it and the truck collided, the points of contact being the left forefront of the Whippet and the right forefront of the truck. The force of the impact threw Berry out of his car onto the pavement and killed him. The Whippet was turned around and left near the south line of the Gilbert highway—in the intersection, as we gather from the testimony, and facing south. The truck from the point of collision passed across the Gilbert highway and stopped in a borrow pit about 40 feet from the southeast corner of the intersection, facing in a southeasterly direction. An automobile going north on the Mesa-Chandler highway, just at the time, was rapidly approaching the intersection, and the driver of the truck (Morey) testified:

"Well, I saw there was going to be a wreck there and I looked up the road to see where this car was coming that was coming north, where it would be at the time I got into the intersection, and I didn't know which of the three of us was going to be in it; and what I was loaded with I knew it would be very dangerous to have any concussion or wreck with that load, so I saw the Gilbert road and I swung to my left down the Gilbert road to clear everything."

As shown by Morey and other witnesses, the truck was loaded with dynamite.

It was the contention of the plaintiff that Morey, the driver, was traveling at the rate of 50 miles an hour and became frightened because of the dangerous character of his load and turned over onto the left side of the highway in the pathway of the Whippet and thereby caused the accident.

The defendants contend that Berry drove into the main thoroughfare without stopping or giving any signal whatever of his intentions and that it was impossible to stop the truck, after the driver discovered Berry's movements, so as to avoid the accident.

The issue of negligence the jury decided in favor of plaintiff. It only remains to be seen if the case was otherwise tried in accordance with law.

The respects in which the defendants contend they were not given a fair trial are several in number, and we will endeavor to take each up and determine if the defendants are right in their contentions.

There are several points rather strenuously insisted upon as serious error. One is the introduction into the case of evidence of the character of the load on the truck at the time of the accident. Defendants insist that what the truck was loaded with was entirely immaterial and that proof that it was loaded with dynamite would serve only to prejudice the jury. It is said that an allegation in the complaint to the effect that the truck was loaded with dynamite was, on defendants' motion, stricken by the court and that by reason thereof proof of the character of the load, as that it was dynamite, should have been excluded. They say it was error to permit counsel in his opening statement for plaintiff to tell the jury the truck was loaded with dynamite, as also to introduce evidence to that effect.

We think the defendants would be right in their contention if it appeared that the character of the load had nothing to do with the accident, or that it did not influence the conduct of the truck driver. However, Morey, one of the defendants and the driver of the truck, states in his testimony that he drove the truck, when he saw the Gilbert highway, easterly on such highway and across the pathway of traffic in the direction of Mesa, and that he did this because he saw a car coming from the south and, having a load of dynamite, he took that direction to avoid a collision with the car going north and an explosion of the dynamite. In view of this statement of the defendant Morey, we think that the character of the load he

was carrying became highly important and material. It tended to explain why Morey changed his course from south to east. It was a part of his narration of the incidents or happenings and his connection therewith. He said, in effect, it was because his load was dynamite that he swung to the left to get out of the path of the oncoming car from the south and thereby avoid being blown to pieces by exploding dynamite. So long as it did not appear that the dynamite had anything to do with the accident, reference to the character of the load was incompetent and improper. But, when defendant Morey explained that its presence was what caused him to switch from the right to the left side of the highway, the reference in the opening statement to the truck being loaded with dynamite, and evidence by others that it was so loaded, if error, was cured.

While defendant Morey was a witness in behalf of the defense, he was asked by plaintiff's counsel this question: "As a matter of fact, aren't you incarcerated in jail now doing time?" An objection to the question was sustained and the jury was instructed to disregard it. Counsel for defendants "by reason of that question" asked that a mistrial be ordered. The ruling denying such request is assigned as error. Under the ruling it does not appear whether Morey was or was not in jail at the time, but defendants insist that the asking of the question was most harmful in itself, in that it left with the jury an inference that the witness was in jail serving time on account of his conduct on the occasion of Berry's accidental death. It is no doubt true that the jury because of such question wondered if Morey was in jail and if so why, but, since the jury was told by the court to disregard the question, is it not reasonable to assume that it judged the witness' testimony in the light of its reasonableness and the candor of its telling, rather

than upon something it was told to disregard? In *McCann* v. *State,* 20 Ariz. 489, 496, 182 Pac. 96, 99, where a similar question was involved, we said, quoting from *Hopt* v. *Utah,* 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708:

" 'The trial of a case is not to be suspended, the jury discharged, a new one summoned, and the evidence retaken, when an error in the admission of testimony can be corrected by its withdrawal with proper instructions from the court to disregard it.' "

 Defendants complain because the court denied their request to have the jury inspect the Whippet automobile at Chandler where it was in a garage, there being evidence it was in the same condition as on the day of the accident. The evidence as to whether the Whippet had a hand-operated windshield wiper or not was in dispute. Plaintiff testified it did have and that because it was misting rain deceased used it to wipe the windshield just before the accident. There was evidence by a witness who inspected it the day of the trial that the Whippet had no hand windshield wiper but that it had "a part of an automatic windshield wiper." Defendants say that an inspection of the car by the jury would have demonstrated who was telling the truth and disproved plaintiff's testimony. The materiality of the testimony as to the windshield, unless supplemented by other evidence showing that the misting rain prevented the driver from seeing approaching automobiles from his right and left, is very questionable. If the driver could see the lights of automobiles traveling on the Mesa-Chandler highway—and there was no evidence that he could not—without a wiper being used on his windshield, it would be immaterial as to whether he had such a wiper or not.

 The request for inspection was made at the close of the taking of the evidence. We have no stat-

ute governing the matter in civil cases although we have in criminal. Section 5064, Revised Code of 1928. If that statute is followed, or whether it is or not, we think the matter was discretionary with the court. Wigmore on Evidence, second edition, volume 2, section 1164, says:

"The inconvenience of adjourning court until a view can be had, or of postponing the trial for the purpose, may suffice to overcome the advantages of a view, particularly when the nature of the issue or of the object to be viewed renders the view of small consequence. Accordingly, it is proper that the trial court should have the right to grant or to refuse a view according to the requirements of the case in hand. In the earlier practice, the granting of a view seems to have become almost demandable as of course; but a sounder doctrine was introduced by the statute of Anne (which apparently only restated the correct common-law principle); so that the trial court's discretion was given its proper control: (Citing cases.) Accordingly, this provision, leaving the granting of the view to the trial court's discretion, is found in almost every statute on the subject; and this doctrine is constantly exemplified in judicial decision. It may be noted, as one circumstance affecting the exercise of that discretion, that, since the present condition of an object is not always a good index of its prior condition at the time in issue (*ante* section 437), a view may well be refused where such a change of condition is likely to have occurred that a view of the object in its present condition would probably be misleading."

One of the grounds urged by defendants for a new trial was

"the bringing of the two minor children of the plaintiff and her deceased husband within the railed portion of the court room commonly used by counsel and litigants and keeping them there throughout the trial."

It is a common practice in cases of this kind to have the children of the deceased or injured person in the

courtroom during the trial, and generally its only purpose and effect is to excite the sympathy of the jury in their behalf. It is a practice that should be discouraged when it is apparent that that is its only object. It can, and should, be handled by the trial court and may be done without attracting the jury's attention thereto upon a request of counsel out of the jury's hearing. There is nothing in the record however to show that plaintiff had her small children within the railing of the court except defendants' unverified motion for a new trial. The showing is insufficient and the objection too late.

■ The court gave an oral instruction to the jury, which was stenographically taken down, to the effect that, if it believed deceased, before entering the intersection, stopped his car and it further believed from a preponderance of the evidence he acted as a reasonably prudent person, and that he believed he had time to clear the intersection and proceed to the north before either of the other cars arrived traveling at a reasonable rate of speed, its verdict should be for plaintiff. After dictating this instruction, the court requested that it be read and re-read and finally, because it was confusing and not clear, ordered it stricken, with an admonition to the jury to disregard it. This action of the court in the presence of the jury is assigned as error. It is apparent that the instruction is not a correct statement of the law, but, since it was not submitted to the jury but was condemned by the court in its presence with an admonition to it to disregard it, we do not see wherein defendants may have been prejudiced thereby. We must suppose that the jury was not influenced one way or the other by the incident.

■ Defendants contend that the following instruction comments on the evidence and assumes as an uncontroverted fact that the emergency or perilous

situation created or brought about at the intersection of the Gilbert and Mesa-Chandler highways was brought about by defendant Morey and not by either of the other participants in the collision. It is said that such instruction violates section 12, article 6, of the Constitution, reading as follows:

"Judges shall not charge juries with respect to matters of facts nor comment thereon, but shall declare the law."

The instruction reads:

"I instruct you that the rule that a defendant who is confronted with a sudden emergency is not held to the same calm and correct conduct as if he had not been confronted with any such emergency applies only in cases in which the sudden emergency was not due to the defendant's own negligence.

"I therefore instruct you that if a motor vehicle driver himself created the sudden emergency or brought about the perilous situation through his own negligence, he cannot avoid liability for an injury merely on the ground that his acts were done in the stress of a sudden emergency. He cannot shield himself behind an emergency created by his own negligence if such be the proof."

The first sentence of the instruction states the law correctly. 5 Am. Jur. 600, § 171; 42 C. J. 890, § 592; 79 A. L. R. 1277. The next two sentences hypothetically apply the law, that is, the court told the jury that, if the defendant Morey negligently created the emergency or perilous situation, he could not invoke the emergency rule. Whether the defendant created or brought about the perilous situation the court did not undertake to state. That was left clearly to the jury's determination from the evidence. The method of instructing the jury hypothetically is permissible. *Pfeiffer* v. *State,* 35 Ariz. 321, 278 Pac. 63; *Lacy* v. *State,* 38 Ariz. 60, 64, 297 Pac. 872, 874. In the latter case we said:

"Upon that issue the court in the above instructions hypothetized the evidence, both that supporting the defense and denying it, and declared the law. In other words, the court said: 'If you find from the evidence that such a state of facts exists, the law is as follows,' etc. Such an instruction, we have held, is not an explanation or criticism of the evidence or an assertion or an assumption of any particular fact in the case, and does not violate section 12, article 6, of the state Constitution. *Pfeiffer* v. *State*, 35 Ariz. 321, 278 Pac. 63. The form of instruction used, it seems to us, is the only practical one in order to make an understandable and clear declaration of the law applicable to the facts, and one universally employed."

 Defendants also complain that the verdict is excessive and was given under the influence of prejudice and passion "instilled by incompetent evidence and misconduct on the part of the appellee and her counsel." The verdict was for $12,500. If this sum is excessive, we do not think it was caused by the reasons ascribed. The action is one for wrongful death under chapter 18, sections 944–946, Revised Code of 1928, and is for the benefit of the estate of the deceased. The evidence shows that Berry was 41 years of age; that he was a carpenter, in good health and capable of earning good wages; that his wages were from 50 cents to $1 an hour; that he had an expectancy of 26.72 years; and that he was sober and industrious. The statute provides that "the jury shall give such damages as they deem fair and just." Section 946, *supra*. In *Arizona Binghampton Copper Co.* v. *Dickson*, 22 Ariz. 163, 178, 195 Pac. 538, 543, 44 A. L. R. 881, we discussed the question of damages in a case of this kind and we there said:

"The evidence shows that the expectancy of life of the deceased was 37.43 years. Of course, it is always very difficult to determine what any person would have accumulated at the end of his life and left as his estate, because it depends upon so many varying fac-

tors. The statute seems to place the duty of arriving at this amount solely upon the jury, with the one admonition that they 'shall give such damages as they shall deem fair and just.' The measure of damages in a case where they become an asset of the estate differs from the measure of damages where they are recovered by particular beneficiaries, in that in the latter the damages are limited to compensation, whereas in the former they represent the probable accumulations of the deceased had he lived his allotted time according to mortality tables. *Perham* v. *Portland Elec. Co., supra* [33 Or. 451, 53 Pac. 14, 72 Am. St. Rep. 730, 40 L. R. A. 799]. We cannot say that the amount of the verdict in this case was 'so disproportionate to the result of any reasonable computation' as to indicate bias or prejudice. *Inspiration Cons. Copper Co.* v. *Conwell, supra* [21 Ariz. 480, 190 Pac. 88]. Computations based on the earning power of deceased and his expectancy of life can readily be made of an amount equal to the verdict. In the nature of things, it is humanly impossible to arrive at exact results because of the variableness of the factors entering into the computation. His life might have proved to be worth more or less than the verdict. We cannot say.''

The verdict in the Dickson case was for $15,000. Dickson was a miner, 26 years and 8 months of age, earning from $6 to $6.40 per day and had an expectancy of 37.43 years.

The jury in the present case, after hearing all the evidence, has said $12,500 damages to the estate of the deceased was ''fair and just'' and we do not feel that we should disturb the jury's verdict.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.