672 P.2d 937

Joshua W. PETEFISH, a minor and disabled person, By and Through his guardian ad litem, Kenneth P. CLANCY, Plaintiffs-Appellants,

v.

C. Kendall DAWE and Millie Dawe, husband and wife; and Grady C. Dawe, a single person, Defendants-Appellees.

No. 1 CA-CIV 5289.

Court of Appeals of Arizona, Division 1, Department B.

May 25, 1982.

Rehearing Denied Aug. 3, 1982.

Review Granted Sept. 16, 1982.

Langerman, Begam, Lewis & Marks, P.A. by Samuel Langerman, Noel Fidel, Phoenix, for plaintiffs-appellants.

Robbins & Green, P.A. by Michael J. O'Grady, Phoenix, for defendants-appellees.

## OPINION

EUBANK, Judge.

On the evening of September 16, 1978, the defendant-appellee, Grady C. Dawe, overturned his father's 1965 Chevrolet pick-up truck. One of the passengers therein, Joshua W. Petefish, was severely injured, and filed a claim in negligence against Grady Dawe for injuries he sustained.[1] Since Grady Dawe was a minor, his parents were appointed guardian ad litem. Joshua Petefish was rendered legally incompetent from his injuries, and has taken no active role in this action.

---

1. The original complaint was filed by Jean Petefish, as mother and guardian ad litem for Joshua. After Jean Petefish's death, Kenneth P. Clancy continued the litigation as the duly

named as parties defendant on theories of derivative negligence[2] (for the actions of their minor child), and negligent entrustment of an automobile to an unsafe driver.

The matter proceeded to a jury trial on all issues. Allegations of contributory negligence and assumption of risk were abandoned, with Dawes' sole defense being that Grady was a skilled and competent driver who was not negligent on the night of the accident. Following the trial, judgment for the appellees was entered, based on a jury verdict for the defense on both the negligent driving and negligent entrustment claims. Appellants have appealed from this judgment and the denial of their motions for judgment N.O.V. and for a new trial.

Although several legal issues were raised and argued at trial, appellants have raised only one issue for consideration by this Court: whether the giving of a "sudden emergency" instruction constituted reversible error under the facts of this case. Having reviewed the entire record, we conclude that the testimony warranted such an instruction, and that the instruction, as offered to the jury, correctly stated the law of Arizona. Thus, the judgment is affirmed.

At the time of the accident, Grady Dawe was 15 years old and was not yet licensed to drive a motor vehicle. Nevertheless, the evidence showed that he had extensive daytime and nighttime driving experience and was often allowed to drive his parents' vehicle on the country roads surrounding his home in Cave Creek, Arizona. On the night in question, he had received permission to drive the family pickup to a desert party near his home. Grady attended the party, accompanied by three teenage friends, Jeffrey Wilms, Todd Davis, and Neil Cowie.

While attending the party, Grady Dawe was approached by an acquaintance, Chuck O'Connor. O'Connor was concerned over the rapid loss of air in one of his tires, and having no spare, he requested that Dawe follow him into town. Dawe agreed, and O'Connor drove off, accompanied by his brother, Paul O'Connor, Matt Parsons, and Joshua Petefish. Dawe followed, accompanied by his previously mentioned passengers, all of whom were seated in the cab of the pickup. Both vehicles proceeded south on Spur Cross Road, headed toward Cave Creek.

Approximately three-tenths of a mile from the site of the party, the O'Connor vehicle stopped. Dawe stopped alongside, and with minimal explanation, Joshua Petefish got out of the O'Connor car and jumped into the bed of the Dawe pickup. O'Connor again drove off and Dawe followed. Later, it was learned that Petefish removed himself from the O'Connor vehicle because he did not trust the deflating tire.

O'Connor proceeded on, and shortly thereafter rounded a sharp right-hand curve on the winding Spur Cross Road. The deflating tire blew out entirely, causing the O'Connor vehicle to spin around in the road. The car was still in "drive," and it began creeping back in the very direction from which it came. Meanwhile, the Dawe pickup was rapidly approaching, though still out of sight around the curve. Grady Dawe and all of his passengers testified that Dawe had the pickup in complete control and was rounding the curve in a safe and reasonable manner. Suddenly, they claimed, they were blinded by the bright headlights of the O'Connor vehicle, which seemed to be coming "right at" them. Dawe testified that a collision seemed inevitable, and in an act of desperation, he spun his wheel to the right. The pickup swerved to the right; it struck the right-hand embankment, rolled over and came to rest without ever touching the O'Connor vehicle. All passengers in the cab escaped through a window with minor injuries except Joshua Petefish. He was found underneath the truck, seriously injured. All of Dawe's passengers testified that peril of collision with the O'Connor vehicle was imminent, and each would have taken evasive action to avoid an apparent head-on collision if they had been driving.

**2.** This claim was based on A.R.S. § 28–420 (1976), which subjects those who permit the use of a motor vehicle by an unlicensed minor to liability for the minor's driving torts.

Realizing the seriousness of the accident, Chuck O'Connor attempted to return to the party to seek help in his disabled car. Unfortunately, once his car was moved, its location at the time of the rollover has never been precisely determined. Rather, the location has become an issue of dispute.

Appellants contended throughout the trial that Dawe had lost control of his vehicle before O'Connor's car came into view, or that in any event, the O'Connor vehicle was so far away that it could not possibly have presented an appearance of imminent peril. To support their theory of the case, appellants presented a qualified accident reconstructionist, Mr. Paul Blubaum, who testified in substance that the O'Connor vehicle played no causal part in Dawe's rollover. Rather, Mr. Blubaum concluded that Dawe's negligent driving was the sole cause of the rollover. This evidence, of course, conflicted sharply with the testimony of Dawe and his passengers concerning a "sudden emergency," and brings us to the central legal issue of whether the circumstances present herein warranted application of the "sudden emergency doctrine."

■ It is well settled in Arizona law that an actor who is faced with sudden unexpected peril cannot be held to the standard of care of a reasonably prudent man who is not faced with such peril. *See Sheehy v. Murphy,* 93 Ariz. 297, 380 P.2d 152 (1963); *Southwestern Freight Lines v. Floyd,* 58 Ariz. 249, 119 P.2d 120 (1941); *Stump v. Fitzgerald,* 14 Ariz.App. 527, 484 P.2d 1056 (1971). In appropriate circumstances, a person charged with negligence is entitled to have the jury instructed on the sudden emergency doctrine. *See Campbell v. Brinson,* 89 Ariz. 197, 360 P.2d 211 (1961); *Western Truck Lines v. Berry,* 52 Ariz. 38, 78 P.2d 997 (1938). It should be noted, however, that the sudden emergency doctrine is not a departure from the reasonable man standard of care. Rather, it is merely an aid in determining negligence, informing the jury that the hypothetical reasoanble man may make unwise choices when faced with sudden peril. *See Fulton v. Johannsen,* 3 Ariz.App. 562, 416 P.2d 983 (1966); D.

Wilson, *Arizona Automobile Negligence,* § 17 (1962).

■ Traditionally, Arizona has imposed three prerequisites to the giving of the sudden emergency instruction: (1) there must be a sudden or unexpected confrontation with imminent peril; and (2) the emergency must not be a result of the negligence of the person seeking the instruction; and (3) the party seeking the instruction must have had two or more alternative courses of conduct available. *See Tansy v. Morgan,* 124 Ariz. 362, 364, 604 P.2d 626, 628 (1979), citing authority for each of the prerequisites. Where any prerequisite is lacking, either as a matter of law or through a deficiency in the evidence, the giving of the instruction has been held to be reversible error. *See Woods v. Harker,* 22 Ariz.App. 83, 523 P.2d 1320 (1974) (no perception of an emergency situation); *Livesay v. State,* 126 Ariz. 345, 615 P.2d 642 (1980) (emergency caused by the actor's own negligence); *Dobbertin v. Johnson,* 95 Ariz. 356, 390 P.2d 849 (1964) (no alternative courses of action).

■ Appellants contend that all prerequisites were lacking in the case at bar. Thus, they contend that the giving of the instruction was reversible error. Before proceeding to examine the prerequisites individually, however, we take notice of the general rules regarding jury instruction on sudden emergency. Our courts have held that the instruction is warranted where reasonably supported by the evidence, even though that evidence may be slight. Furthermore, when reviewing the giving of the instruction, we view the facts in a light most favorable to the party requesting the instruction. *See, e.g., Tansy v. Morgan,* 124 Ariz. 362, 604 P.2d 626 (1979); *Johnson v. Orcutt,* 92 Ariz. 295, 376 P.2d 557 (1962); *Winchester v. Palko,* 18 Ariz.App. 534, 504 P.2d 65 (1972); *Worthington v. Funk,* 7 Ariz.App. 595, 442 P.2d 153 (1968); *Fulton v. Johannsen,* 3 Ariz.App. 562, 416 P.2d 983 (1966). Bearing these rules in mind, we turn to the prerequisites.

## I. IMMINENT PERIL

Appellants contend that no real or apparent emergency ever existed in the instant case. The argument is threefold: (1) that the O'Connor vehicle posed no real peril; (2) that the O'Connor vehicle was too far away to create an appearance of peril; and (3) that the trial judge was under the erroneous impression that any subjective apprehension of peril, no matter how unreasonable, would support the sudden emergency defense to negligence.

■ We may assume for purposes of this opinion that the O'Connor vehicle posed no real peril to Grady Dawe. We disagree, however, with the other conclusions drawn by appellants. First, we do not believe that the physical evidence was so conclusive as to require a ruling, as a matter of law, that no appearance of peril existed. As previously mentioned, the location of the O'Connor vehicle at the time of the rollover was an issue of considerable factual dispute in trial. Appellants attempted to prove its location through the use of their accident reconstructionist, the occupants of O'Connor's car, and several exhibits. On appeal, they contend in substance that this evidence should be deemed conclusive on the issue of apparent peril. From a reading of the transcript, however, we cannot agree. The evidence conflicted with the perceptions of Dawe and his passengers and the occupants of the O'Connor vehicle. The conflict could be resolved only by the jury, weighing the credibility of the various witnesses' perceptions. Such resolution of conflict was precisely within the province of the jury. As stated in *Worthington v. Funk,* 7 Ariz.App. 595, 598, 442 P.2d 153, 156 (1968):

> These conflicts on significant facts only prove that it is a question for the jury to determine whom to believe and whether defendant acted reasonably under the circumstances. Defendant was entitled to go to the jury on these issues and the instruction was therefore proper.

Appellants argue, however, that the trial judge erred as a matter of law by allowing subjective evidence of imminent peril to go to the jury when he specifically stated that the imminent peril was unsupported by objective evidence. Appellants rely on the trial judge's minute entry denying their motion for judgment N.O.V. and/or new trial, which we quote in relevant part:

> The Defendant, Grady C. Dawe, and the other passengers in the cab of his pickup truck testified as to their subjective beliefs that they were in a situation of "imminent danger" of collision with the oncoming O'Connor vehicle. However, there was no objective evidence to support their beliefs.
>
> \*       \*       \*       \*       \*       \*
>
> Leaving aside questions of credibility as to the truthfulness of the testimony of Defendant, Grady C. Dawe, and his passengers, the Court finds that there was no objective or actual presence of imminent danger to the Defendant, Dawe, or his passengers, and no evidence from which the jury could reasonably conclude that there was.

Having read this quoted portion in context, and in the context of the post-trial setting, we believe that the trial judge's words have been unfairly characterized by appellants. Leaving aside the credibility of the witnesses, he states, there is no objective evidence to support a finding of imminent peril. This is quite true, but the testimony of three eyewitnesses plus the defendant cannot be discounted as a matter of law. When their credibility is taken into account (a matter solely within the province of the jury), it must be said that there is direct objective evidence to support a jury finding of imminent peril.

We are not persuaded that the trial judge was laboring under a mistake of law. Therefore, we hold that the evidence reasonably supported the prerequisite of "imminent peril."

## II. ALTERNATIVE COURSES OF ACTION

■ The essence of the sudden emergency doctrine is the making of an unwise choice in the face of imminent peril. Therefore, our courts have held that the

doctrine is inapplicable where the person charged with negligence had no opportunity to choose between two or more alternative courses of action. *Dobbertin v. Johnson,* 95 Ariz. 356, 390 P.2d 849 (1964); *Woods v. Harker,* 22 Ariz.App. 83, 523 P.2d 1320 (1974). On the other hand, where alternative courses of action exist and the actor chooses one, this prerequisite is satisfied despite the fact that none of the alternatives were attractive. *See Winchester v. Palko,* 18 Ariz.App. 534, 504 P.2d 65 (1972); *Worthington v. Funk,* 7 Ariz.App. 595, 442 P.2d 153 (1968); *Fulton v. Johannsen,* 3 Ariz.App. 562, 416 P.2d 983 (1966); *Serrano v. K.A. Ethridge Contracting Co.,* 2 Ariz. App. 473, 409 P.2d 757 (1966).

Appellants contend, however, that the prerequisite is not satisfied unless the actor is being specifically faulted for choosing the wrong alternative. We find no such requirement in the cases cited above. The sudden emergency doctrine is a matter of defense. If the actor can show that alternative courses of action existed and that he chose among them, the prerequisite is satisfied notwithstanding plaintiff's theory of the case. Therefore, we turn to the evidence presented by the defense.

Grady Dawe and his passengers testified that, in the face of the imminent peril as they perceived it, evasive action was necessary. Grady testified that he locked his brakes and spun his steering wheel to the right, causing him to swerve right and strike the right-hand embankment and flip over. Appellants contended that this evasive action was unnecessary in that Grady would not have collided with O'Connor no matter what he did. If this is true, as appellants claim, it is clear that alternative courses of action existed, and Grady Dawe chose unwisely among them.

Appellants further contend that no evasive action was in fact taken, or, if it was, it played no causal role in the accident. This contention is contrary to the weight of

evidence produced, and at best, it can only be said to represent a conflict in the evidence. Upon this state of facts, we hold that the evidence reasonably supported the prerequisite of alternative courses of action.

## III. ANTECEDENT NEGLIGENCE

Another principle of the sudden emergency doctrine is that an actor cannot, through his own negligence, create an emergency situation, then use that emergency as an excuse for his subsequent negligence. *See Livesay v. State,* 126 Ariz. 345, 615 P.2d 642 (1980); *Cano v. Neill,* 12 Ariz. App. 562, 473 P.2d 487 (1970). Appellants contend that Grady Dawe was negligent in driving too fast to maintain control of his vehicle, and that he was negligent per se in driving over the imaginary center line of the roadway.

Addressing first the issue of speed, all witnesses agreed that Dawe's pickup was going approximately 35 miles per hour when it rounded the curve. Evidence was admitted as to the critical speed[3] of the curve in question, but the testimony, as a whole, was simply insufficient to rule as a matter of law that Dawe's speed was unreasonable or imprudent. Under our case law, a party is entitled to go to the jury on the issue of antecedent negligence if a true factual dispute exists. Therefore, the issues raised by Dawe's speed would not preclude the giving of a sudden emergency instruction. *See Campbell v. Brinson,* 89 Ariz. 197, 360 P.2d 211 (1961); *Lowery v. Turner,* 19 Ariz.App. 299, 506 P.2d 1084 (1973).

On the issue of driving over the imaginary center line, the physical evidence showed that Dawe was approximately three feet over the imaginary center line of a smooth gravel roadway 21 feet in width. This is a violation of statute. A.R.S. §§ 28–721, 28–726. Counsel for appellees conceded negligence per se in his closing argument, but argued that this violation of statute was not a causal factor in the acci-

---

**3.** That speed at which the physical forces acting on the vehicle overpower the driver's control.

dent or in the creation of the emergency situation.

In considering whether a person's antecedent negligence created the sudden emergency, we are of the opinion that the issue must be addressed in terms of causation in fact. As the name implies, causation in fact is a question of fact for the jury in all but rare instances. Prosser on Torts, § 45 at 289 (4th ed. 1971). Viewing the facts in a light most favorable to support the verdict and judgment we are persuaded that reasonable men might differ as to whether Dawe's driving over center was a factor in creating the sudden emergency. Again we emphasize that the location of the O'Connor vehicle was a matter of considerable dispute. Not only were questions raised as to the distance between the O'Connor vehicle and the point of rollover, but also as to the positioning of the O'Connor vehicle relative to the roadway and Dawe's truck. We do not agree with appellants that Grady Dawe should have anticipated the location of the O'Connor vehicle, because we do not know the location of the O'Connor vehicle. Nor do we know where the jury placed the O'Connor vehicle. From the evidence presented, however, the jury could easily infer that the unusual maneuvering and position of the O'Connor vehicle was the sole cause in fact of the appearance of imminent peril and the accident.[4]

We have previously noted that bona fide factual disputes regarding antecedent negli-

gence do not preclude the giving of a sudden emergency instruction. Upon the facts present in the case at bar, we now hold that bona fide factual disputes regarding causation between antecedent negligence and the sudden emergency do not preclude the giving of the instruction. It is our conviction that the jury, when properly instructed, can determine whose fault the sudden emergency was. *Cf. Lowery v. Turner, supra.*

## IV. INSTRUCTION

This brings us to the final issue on appeal: was the jury properly instructed? The instruction at issue herein[5] has been quoted and approved by our appellate courts. See, *e.g., Tansy v. Morgan,* 124 Ariz. 362, 363–64, 604 P.2d 626, 627–28 (1979); *Lowery v. Turner, supra.* Appellants concede this, but argue that the instruction was nevertheless inappropriate under the instant facts.

As a sequel to the issue raised by our previous discussion on causation in fact, we note that the sudden emergency instruction was once specifically modified to stress the importance of antecedent negligence. See *Gilbert v. Quinet,* 91 Ariz. 29, 369 P.2d 267 (1962). We believe that the current instruction adequately addresses this problem by devoting an entire paragraph to antecedent negligence and creation of the emergency. We see no deficiency in this regard. *See also Valentine v. Faulkner,* 12 Ariz.App. 557, 473 P.2d 482 (1970).

4. Appellants contend that Grady Dawe admitted his causal role in creating the emergency. The question and answer referred to, however, are not as significant as appellants contend. We view this admission as merely one piece of evidence to be considered by the jury. It is their function to weigh the evidence.

5. The jury was instructed as follows:
A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence, or the appearance of imminent danger to himself or to others is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exer-

cise in the same situation. If at the moment he does what appears to him to be the best thing to do and if his choice and manner of action are the same as might have been followed by an ordinarily prudent person, under the same conditions, he does all the law requires of him, although in the light of after events it should appear that a different course would have been better and safer.

If a motor vehicle driver himself created the sudden emergency or brought about the perilous situation through his own negligence, he cannot avoid liability for an injury, merely on the ground that his acts were done in the stress of a sudden emergency. He cannot shield himself behind an emergency created by his own negligence.

Appellants argue that the instruction allows the erroneous impression that any apprehension of peril, no matter how unreasonable, will support the defense of sudden emergency. While it is true that the apprehension must be reasonable, we believe that the instruction adequately conveys this idea. The instruction merely places the hypothetical reasonable man in the same position as the person charged with negligence. If the jury is convinced that no appearance of peril existed, it seems only logical for them to conclude that the subsequent actions were unreasonable. At trial, appellants attempted to show that Grady Dawe's apprehension of peril was unreasonable. The fact that the jury did not so conclude, we believe, was not due to a deficiency in the instruction but was due to the evidence.

Upon our review of the record, it is our opinion that appellants received a fair trial. Therefore, the judgment is affirmed.

HAIRE and FROEB, JJ., concur.