672 P.2d 914

Joshua W. PETEFISH, a minor and disabled person, By and Through his guardian ad litem, Kenneth P. CLANCY, Plaintiffs-Appellants,

v.

C. Kendall DAWE and Millie Dawe, husband and wife; and Grady C. Dawe, a single person, Defendants-Appellees.

No. 16135–PR.

Supreme Court of Arizona,
En Banc.

Oct. 6, 1983.

Reconsideration Denied Nov. 15, 1983.

Langerman, Begam, Lewis & Marks by Samuel Langerman, Noel Fidel, Phoenix, for plaintiffs-appellants.

Robbins & Green, P.A. by Michael J. O'Grady, Phoenix, for defendants-appellees.

FELDMAN, Justice.

Appellant (plaintiff) petitioned for review of a decision of the court of appeals which affirmed the judgment of the trial court. All issues on appeal pertain to the propriety of an instruction on the sudden emergency doctrine. We granted review in order to examine and settle the law of this state with regard to that doctrine. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 23.

A detailed version of the facts is set forth in the decision of the court of appeals. *Petefish v. Dawe*, 137 Ariz. 593, 672 P.2d 937 (App.1983). A brief summary follows.

Defendant Grady Dawe was driving his parents' truck on a dirt road near Cave

Creek, Arizona on the night of September 16, 1978. Plaintiff was a passenger. Dawe was following a car driven by a friend, Chuck O'Connor. A tire on O'Connor's car had been losing air; since O'Connor did not have a spare, he had asked Dawe to follow him into town.

As O'Connor's car rounded a curve in the road, the deflating tire blew out and the vehicle spun completely around in the road. At the end of the spin, O'Connor's car began to travel back in the direction from which it had come. About this same time, Dawe's truck rounded the curve. Dawe and the other passengers in his truck testified that they were blinded by the headlights of O'Connor's approaching car, that it seemed to be close and coming right at them on the wrong side of the road. It was uncontested that O'Connor's vehicle had its headlights on high beam. Dawe testified that in order to avoid a head-on collision, he applied his brakes and turned his steering wheel sharply to the right. As a result, he ran off the road and his truck rolled over. Plaintiff was very seriously injured.

Plaintiff brought a negligence action against Dawe and his parents. Dawe denied that he was negligent and claimed that he had run off the road in an attempt to avoid the sudden emergency he faced. He argued that his actions were reasonable under the circumstances of that emergency. Over plaintiff's objections, the trial court instructed on the sudden emergency doctrine. The jury returned a verdict in favor of defendants, and plaintiff appealed. All issues raised on appeal pertain to the application of the sudden emergency doctrine under the facts of this case and to the wording of the instruction given the jury on that subject.

## ANTECEDENT NEGLIGENCE

██ Plaintiff's first argument is based on Dawe's alleged antecedent negligence in driving. Plaintiff contends the emergency doctrine is inapplicable because Dawe's negligence was a cause of the emergency. We acknowledge the rule that an actor is not entitled to the benefit of the emergency doctrine when his own negligence has been a cause of the emergency. *Gilbert v. Quinet,* 91 Ariz. 29, 33–34, 369 P.2d 267, 270 (1962); Restatement (Second) of Torts § 296, comments a and d (1965). However, where there is an issue of fact on the question of antecedent negligence, the jury must be instructed conditionally and "allowed to determine whether the ... driver was responsible for the suddenness of the crisis which he faced." *Gilbert v. Quinet,* 91 Ariz. at 33–34, 369 P.2d at 270. Dawe and three of his passengers all testified that Dawe was driving properly, at a reasonable speed, on his side of the road and in control of his vehicle until seeing the lights of O'Connor's car heading right at them. The court of appeals held that this evidence did present an issue of fact with respect to whether the "emergency" had been caused by Dawe's antecedent negligence. We agree with the analysis made by the court of appeals.

## ALTERNATIVE COURSES OF CONDUCT

Plaintiff contends the emergency doctrine is only applicable where the actor has chosen among alternative courses of conduct. Since plaintiff does not claim that Dawe improperly chose between alternatives, he argues that the emergency doctrine was irrelevant in this case and the court therefore erred by instructing on the doctrine. The court of appeals agreed with the plaintiff's characterization of this aspect of the emergency doctrine but held that the jury could have found that Dawe had a choice between alternatives so that the instruction was warranted.

While we agree with the result, we think the emphasis on alternative courses of action is misplaced. The emergency doctrine is not so much a matter of deliberate choice between alternatives available to meet a sudden emergency as it is a matter of impulse and reaction.

An emergency has been defined as a sudden or unexpected event or combination of circumstances which calls for immediate action; and although there are courts

which have laid stress upon the "instinctive action" which usually accompanies such a situation, it seems clear that the basis of the special rule is merely that the actor is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same conduct as one who has had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation. His choice "may be mistaken and yet prudent."

W. Prosser, *Handbook of the Law of Torts* § 33, at 169 (4th ed. 1971) (footnotes omitted).

■ The court of appeals stated that "[o]ur courts have held that the doctrine is inapplicable where the person charged with negligence had no opportunity to choose between two or more alternative courses of action."[1] While it is true that the statement has often been made, we think it legally incorrect. The doctrine is applicable when there is reaction, or time to react, even though a deliberate choice is not made. If the other elements are fulfilled, the doctrine applies wherever the actor has reacted to the emergency, even though that reactive conduct might be quite impulsive and negligent absent such an emergency. *Vanderkarr v. Bergsma*, 43 Wis.2d 556, 566–67, 168 N.W.2d 880, 885 (1969).

■ Logically, of course, in every reactive situation there are at least two alternatives. One is to do nothing, and the other is to react. The greater the emergency, the more likely that reaction is the result of impulse rather than conscious deliberation. The logical focus of the sudden emergency doctrine as an excuse for otherwise unreasonable action is on the impulse of reaction. It must be remembered that there may not have been an opportunity "for ... thoughtful balancing of proper expedients. When unraveled in the illuminating glare of hindsight, [the] problem may become ... deceptively easy of solution; but ... an 'emergency' [is] 'an unforeseen combination of circumstances which calls for immediate action'." *Leek v. Dillard*, 304 S.W.2d 60, 69 (Mo.App.1957). There are cases, such as the one at bench, in which it probably would have been better if the actor had not reacted at all. There are other cases where even in the presence of emergency the actor had a chance to determine that there were alternatives and to react by picking one of them. The doctrine may be applicable in both situations; however, the focus should not be on the existence of a deliberate choice between alternative courses of conduct to meet the emergency, but, rather, upon the reasonableness of the actor's reaction to the emergency. Under either analysis, however, the predicate for giving the sudden emergency instruction was present in this case. We therefore agree with the court of appeals' resolution of this issue.

## REASONABLE/UNREASONABLE APPREHENSION OF DANGER

Finally, defendant attacks the application of the emergency doctrine to this case on the theory that the apprehension of peril does not entitle an actor to invoke the sudden emergency rule unless that apprehension is reasonable. Arguing from this premise, plaintiff claims that Dawe's apprehension was unreasonable as a matter of

---

1. *Dobbertin v. Johnson*, 95 Ariz. 356, 361, 390 P.2d 849, 852 (1964), cited by the court of appeals in support of the above-quoted statement, does contain such language. In *Dobbertin*, a young child had suddenly "appeared" in front of defendant's vehicle at a distance of two to three feet from that vehicle. Under those facts, it was apparent that the defendant had had no time to make any response, reasoned or reactive. Thus, the sudden emergency doctrine was irrelevant in terms of excusing the driver's conduct and was, therefore, inapplicable. In *Woods v. Harker*, 22 Ariz.App. 83, 523 P.2d 1320 (1974), also cited by the court of appeals, the defendant had not been aware of any emergency, and the court of appeals correctly affirmed the trial court's ruling that a sudden emergency instruction should not have been given. *See also Tansy v. Morgan*, 124 Ariz. 362, 604 P.2d 626 (1979).

law so that the instruction should not have been given at all. Even if properly given, plaintiff claims the wording of the instruction was erroneous because it failed to inform the jury that Dawe was not entitled to the benefit of the emergency doctrine unless they found the peril with which he thought himself confronted was either actual or reasonably apprehended to be actual. The essence of both arguments is that the unreasonable or negligent apprehension of danger where none exists is a circumstance which precludes the application of the emergency doctrine to the actor's subsequent attempt to evade the danger.

■ Without citation of authority, the court of appeals agreed with this theory. Though many cases contain language which indicates the apprehension must be reasonable (e.g.: *Woods v. Harker, supra* note 1), cases with a specific holding on that point are more difficult to find. However, where the point has been considered, the cases have uniformly held that the doctrine is inapplicable where the sudden peril was neither real nor reasonably apprehended. *Beaumaster v. Crandall,* 576 P.2d 988, 992 (Alaska 1978); *Allen v. Pearce Dental Supply Company,* 149 Kan. 549, 551, 88 P.2d 1057, 1059 (1939); *Beck v. Browning,* 129 Tex. 7, 10, 101 S.W.2d 545, 546 (1937); *Slate v. Hogback Mountain Ski Lift, Inc.,* 122 Vt. 8, 12, 163 A.2d 851, 854–55 (1960). For this reason and those discussed below, we conclude that the requirement of reasonable apprehension is a proper limitation on the emergency doctrine. We hold, therefore, that to warrant an instruction on sudden emergency the actor must have faced an actual situation of imminent peril or a situation which a reasonable person would perceive as involving imminent peril.

Thus, defendant was not entitled to the benefit of the emergency doctrine unless the emergency was either real or reasonably apprehended. The court of appeals properly found that the evidence here created a jury question on both the issue of whether the emergency was actual and, if not, the issue of whether Dawe reasonably perceived it to be real. Therefore, the court of appeals was correct in holding that the trial court did not err in instructing on the subject of sudden emergency.

With this in mind, we now consider the actual instruction given by the court:

A person who, without negligence on his part, is suddenly and unexpectedly *confronted with peril arising from either the actual presence, or the appearance of imminent danger* to himself or to others is not expected nor required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at the moment he does what appears to him to be the best thing to do and if his choice and manner of action are the same as might have been followed by an ordinarily prudent person, under the same conditions, he does all the law requires of him, although in the light of after events it should appear that a different course would have been better and safer.

(Emphasis supplied.) The italicized portion of the instruction does not expressly limit application of the doctrine to situations of actual or reasonably apprehended peril. Likewise, it does not expressly allow application of the doctrine to situations of unreasonably apprehended peril. On its face it is neutral.

Plaintiff made an appropriate, specific objection to the italicized portion of the instruction. He now claims giving it was reversible error. Plaintiff argues that this instruction is defective because it does not specifically state that the actor's apprehension of peril must be reasonable for the emergency doctrine to apply. Consequently, the argument continues, the jury may have relieved Dawe of liability even though it found that a reasonable person in the defendant's position would not have believed there was any danger, and, therefore, would not have reacted as the defendant did. He would be correct if the problem were not adequately covered in some other portion of the instructions. Before con-

sidering that question, we must characterize the problem of "unreasonable apprehension" of danger. Is it some special concept applicable to the sudden emergency situation and therefore an idea which must be covered by special explanation? We think not.

The emergency doctrine is not a rule of law separate and distinct from the general standard of reasonable care. It is, rather, judicial recognition that a perceived emergency is one of the factors which should be considered in determining what is reasonable care under the circumstances. Restatement, *supra*, § 296 comment b. The law recognizes "the impulses of humanity when placed in dangerous positions, and does not expect thoughtful care from the persons whose lives are thus endangered." *Kern v. Des Moines City R. Co.,* 141 Iowa 620, 631, 118 N.W. 451, 455 (1908).

> The doctrine of sudden emergency does not invoke a different standard of care than that applied in any other negligence case. The conduct required is still that of a reasonable person under the circumstances. *The emergency is merely a circumstance to be considered in assessing the actor's conduct.*

*Martin v. City of New Orleans,* 678 F.2d 1321, 1325 (5th Cir.1982) (emphasis supplied). In *Martin,* over a well-argued dissent, a majority of the court held that the trial judge had not erred in refusing an emergency instruction warranted by the facts, because the entire concept of the doctrine was subsumed in the general instructions on negligence in which the jury was told that the defendant was under a duty to use ordinary care "viewed in the light of all the surrounding circumstances" shown by the evidence. The court held that the general instruction had effectively covered the principles of law embodied in the sudden emergency theory. *Id.* at 1326.[2]

Thus, in characterizing the precise problem presented by this case—a possibly unreasonable perception of emergency—we believe that plaintiff's true complaint here is not the omission of some special rule of law, but merely another facet of the concept that the doctrine is no excuse where the actor's negligence is a causal factor in creating the perilous situation. To say that the defendant took dangerous, evasive action because he erroneously and unreasonably perceived impending danger where none existed means only that he was negligent in either perceiving or reacting. The converse of plaintiff's argument is provided by a case where the actor negligently fails to perceive actual danger before it becomes an emergency, and then perceives the danger only when it can be avoided by an extreme and dangerous reaction. We could deal with such a problem in terms of "emergency", but it is better characterized as negligent misperception or negligent reaction. We have held that such a question is one of antecedent negligence, so that the emergency doctrine is inapplicable as a matter of law because it is a form of antecedent negligence which helped create the "emergency." *Tansy v. Morgan, supra* note 1.[3]

---

**2.** The analysis followed in *Martin, supra,* may well be theoretically correct (*see Young v. Miller,* 79 Ill.App.2d 465, 223 N.E.2d 854 (1967); Molloy, *Jury Instructions in Negligence Cases,* 6 Ariz.L.Rev. 27, 35–36 (1964–65)). However, the question of whether our trial courts should refuse sudden emergency instructions because they are subsumed within the concept of the general negligence instruction has not been raised by the parties and is, therefore, not reached by this opinion. Further, even if it is not reversible error to refuse the instruction, once it is given, it must certainly be given in words which correctly inform the jury of all of the operative principles of law, including that which limits the applicability of the instruction to situations where the imminent danger is real or is reasonably apprehended to be real by the actor.

**3.** In *Tansy,* the defendant, traveling 45 miles per hour, noticed plaintiff's car in the traffic lane ahead of him when he was 300 feet away from it, but did not realize until he was 100 feet away that the car was stopped. Defendant attempted to brake, but was unable to do so in time. He did not swerve to the left because of oncoming traffic and decided not to swerve to the right because of the danger of going into an abutting irrigation ditch. We held that the trial court erred in giving defendant's requested instruction on sudden emergency because the plaintiff's car had been "in plain view, in broad daylight . . . for a period of time that was more

■ Such a result is logical. Negligent misperception of danger, like negligent failure to perceive danger, is a type of antecedent negligence which, if a causative factor, renders the emergency doctrine inapplicable.[4] Put another way, reaction to an unreasonably apprehended emergency is a form of negligence. Under the facts of this case and the law as it now exists, plaintiff was entitled to have these concepts conveyed to the jury; failure to give a proper instruction on the emergency doctrine would be reversible error. *Gilbert v. Quinet,* 91 Ariz. at 34, 369 P.2d at 270. However, in determining whether such error exists, we must bear in mind that the plaintiff is not entitled to the use of any specific words, but merely to have the jury "fairly and adequately apprised of the applicable law." *Martin v. City of New Orleans,* 678 F.2d at 1325. It is only if we are left with the "substantial and ineradicable doubt as to whether the jury has been properly guided in its deliberations" that the verdict cannot stand. *Id.,* quoting *Dwoskin v. Rollins, Inc.,* 634 F.2d 285, 293 (5th Cir.1981).

■ The final issue for resolution, therefore, is whether the concepts of negligent misperception of an emergency or negligent reaction where no real peril existed, were substantially covered in the charge to the jury, even though not in those words. We believe that when the entire emergency instruction is considered with the other instructions and the alternative theories of the case as presented by the parties, there is no significant possibility that the jury was misled.

The third sentence of the instruction quoted above plainly states that the law

requires that the actor not only do "what appears to him to be the best thing to do," but that "his choice and manner of action [be] the same as might have been followed by an ordinarily prudent person, under the same conditions." In its second sentence, the instruction states that the actor must exercise "the care that an ordinarily prudent person would exercise" in the same situation. In order for the jurors to conclude that the instruction at issue allowed them to relieve the defendant of liability for negligently reacting based on his subjective, unreasonable apprehension of peril, it would have had to read a subjective standard into the neutral first sentence of the instruction, at the same time ignoring the clearly stated objective standard expressed in other sentences of the same instruction. Furthermore, the other instructions given in the case made it clear that Dawe's conduct was to be judged by an objective reasonable person standard. We believe, therefore, that this facet of the problem was adequately covered.

We note, also, that the trial court ended the instruction on the emergency doctrine with the following paragraph:

If a motor vehicle driver himself created the sudden emergency *or brought about the perilous situation through his own negligence,* he cannot avoid liability for an injury merely on the ground that his acts were done in the stress of a sudden emergency. He cannot shield himself behind an emergency created by his own negligence. (Emphasis supplied.)

We believe that this statement also conveys the essence of the idea that if Dawe

than ample to give defendant the opportunity to stop." 124 Ariz. at 364, 604 P.2d at 628. *See also Vanderkarr v. Bergsma, supra,* in which the court described the possible negligent failure to perceive danger before it became an emergency as a question of antecedent negligence. 43 Wis.2d at 566–67, 168 N.W.2d at 885; *Beaumaster v. Crandall, supra,* where the driver, cresting a hill, saw two cars before her on a two-lane highway. As she perceived the situation, one car was stopped in her lane and the other car, facing her, was stopped in the oncoming lane abreast of the car in her lane. Thus, defendant perceived the roadway to be

totally blocked and took emergency action which led to the accident. In fact, however, the cars were not abreast of each other, but were separated by a distance of almost 900 feet. Given the extent of appellee's misperception, the court concluded that the facts disclosed no emergency as a matter of law. 576 P.2d at 990–92.

4. According to the Restatement, the emergency doctrine is inapplicable if the actor's "own negligence or other tortious conduct" was a cause of the emergency. Restatement, *supra,* § 296 comment d.

had negligently perceived danger and therefore took unwarranted evasive action when no emergency existed, he could not avoid liability merely because his evasive action was taken upon an erroneous and unreasonable apprehension of "sudden emergency." Certainly the instruction left the plaintiff ample room to make such an argument.[5] Plaintiff did not do so because the issue was peripheral to his theory of the case, not because he was foreclosed by the instruction. Plaintiff's theory, supported by evidence and well argued to the jury, was that the emergency had nothing to do with the accident. Plaintiff argued that Dawe had lost control of his car at a point where he could not have seen the O'Connor vehicle and that the loss of control was the result of Dawe's improper speed on a curve, resulting improper position on the road and consequent attempts at over-correction. Dawe's theory of the case was just to the contrary. His evidence was that he had been in control of his vehicle until he saw the O'Connor car coming toward him, in his lane, with bright lights shining at him, and that he deliberately took evasive action to avoid a head-on collision. That theory of the case was argued by defendant's counsel. Plaintiff's answer to defendant's contentions was simply that Dawe and his passengers had either knowingly or unknowingly created the idea of a sudden emergency as a cover-up to avoid facing the fact that Dawe's negligent loss of control was the real cause of the serious injuries sustained by the plaintiff.

■■■ The trial was hard fought and the issues strongly contested. The record indicates that the plaintiff had the stronger argument regarding the position of the Dawe car at the time control was lost. Consequently the inference is strong that Dawe lost control because of antecedent negligence (high speed on curve and over-correction) rather than response to an emergency, reasonably perceived or not. This was the trial judge's view of the evidence. Nevertheless, Dawe and his passengers all testified that Dawe was in complete control until he rounded the curve and saw O'Connor's car coming toward him. The jury evidently believed this version of the accident. The trial judge did not find the verdict against the weight of the evidence and we cannot substitute our view of the record for that of either the trial judge or the jury. *Grant v. Arizona Public Service,* 133 Ariz. 434, 454, 652 P.2d 507, 527, reh. denied (1982). At most, the instruction contained only technical error and, when taken as a whole, conveyed the correct legal concepts to the jury. Therefore, we do not believe the substantive rights of the parties were affected. Under these circumstances, we agree with the court of appeals' conclusion that the instruction, though far from perfect,[6] was not so incomplete or mislead-

---

5. It has been persuasively argued that the emergency doctrine is not so much a distinct rule of law as a species of argument on the meaning of "reasonable care under the circumstances." Restatement, *supra,* § 296 comment b; *Molloy, supra; Young v. Miller, supra.*

6. The court of appeals indicates (137 Ariz. at 599, 672 P.2d at 943) that the complete instruction "has been quoted and approved by our appellate courts." We think it more accurate to say that the concepts embodied in the instruction have been quoted and approved. Unfortunately, some place in the dim and distant past the wording of the instruction seems to have been taken from a discussion of legal principles pertaining to the sudden emergency doctrine. See *Western Truck Lines v. Berry,* 52 Ariz. 38, 78 P.2d 997 (1938), and *Gilbert v. Quinet, supra.* Words used in an opinion discussing legal principles are not necessarily the best words to be used in instructing the jury. Jury instructions are better when framed in clear, comprehensible, everyday English. *See,* for example, the wording of Recommended Arizona Jury Instructions. We suggest the following is a more suitable jury instruction on the sudden emergency doctrine:

In determining whether [plaintiff/defendant] acted with reasonable care under the circumstances, you may consider whether such conduct was affected by an emergency. An "emergency" is defined as a sudden and unexpected confrontation with a danger which is either real or reasonably seems to be real. If, in such an emergency, [plaintiff/defendant] acted reasonably to avoid harm to himself or others you may find him not negligent even though, in hindsight, you feel that under normal conditions some other or better course of conduct could and should have been followed.

ing as to constitute error. Therefore, the opinion of the court of appeals is approved as modified by this opinion, and the judgment of the trial court is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS, J., concur.

If the [plaintiff's/defendant's] own negligence helped cause the need for the alleged emergency action, the emergency is not an excuse.